## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| 251 HIGH STREET HIGHWOOD LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-cv-00889 |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| INDIVIDUALLY AND AS TRUSTEE FOR | ) | |
| THE MASTR ADJUSTABLE RATE | ) | |
| MORTGAGES TRUSTS 2007-3 | ) | |
| MORTGAGE PASS-THROUGH | ) | |
| CERTIFICATES SERIES 2007-3, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants U.S. Bank National Association, Individually[1] and U.S. Bank National Association as Trustee for the Mastr Adjustable Rate Mortgages Trust 2007-3 Mortgage Pass-Through Certificates Series 2007-3's Motion for Summary Judgment under Federal Rule of Civil Procedure 56. Also before the Court is Plaintiff 251 High Street Highwood LLC's Motion to Strike the Affidavit of A.J. Loll. For the reasons that follow, the Court grants the Motion to Strike and denies the Motion for Summary Judgment.

---

[1] U.S. Bank National Association in its individual capacity was not the former owner or mortgage holder who sold the Subject Property to Plaintiff. It has not sent or received any communications, correspondence, or anything at all relating to this case. Dkt. # 61, ¶ 32. U.S. Bank in its individual capacity is therefore dismissed as a party defendant.

**BACKGROUND**

The following facts are taken from the record and are undisputed unless otherwise noted.

Defendant U.S. Bank National Association as Trustee for the Mastr Adjustable-Rate Mortgages Trust 2007-3 Mortgage Pass-Through Certificates Series 2007-3, ("Trustee") is a national banking association acting as trustee of a trust. Dkt. # 61, ¶ 2. Plaintiff 251 High Street Highwood LLC is an Illinois limited liability company and owner of the property located at 251 High Street in Highwood, Illinois (the "Subject Property"). *Id.* ¶ 3. The members of 251 High Street Highwood LLC are Gloria Turan, Hayati Turan, and Cana Oztekin. *Id.* ¶ 4.

On or about April 25, 2017, Trustee filed a foreclosure action in the Circuit Court of Lake County, Illinois, seeking to enforce its mortgage lien on the Subject Property. *Id.* ¶ 5. On June 21, 2018, a Selling Officer's Deed was recorded in the Lake County Recorder's Office, conveying the Subject Property to Trustee because Trustee was the highest bidder at the foreclosure sale in the foreclosure action. *Id.* ¶ 8.

On or about August 30, 2017, the City of Highwood (the "City") issued a document stating that the exterior of the Subject Property had numerous code violations, specifically, the following: (1) grasses and weeds in excess of eight inches in height; (2) iron gates at the foot of the driveway that needed to be removed; (3) algae growth and dirt on the exterior of the structure that should be pressure cleaned; (4) conditions of overgrowth and rubbish/trash piles that could create harborage for rodents;

2

(5) accumulation of rubbish or garbage; and (6) a dead tree in the back yard that needed to be removed. *Id.* ¶ 6. The parties dispute whether Trustee's agents and vendors made the required repairs to the Subject Property. *Id.* ¶ 7.

On or about September 11, 2018, the City sent Trustee a 15-Day Notice to Demolish or Repair (the "15-Day Notice") which listed the same code violations that were in the August 2017 notice. *Id.* ¶ 9. The 15-Day Notice states, "**<u>Unless the dangerous and unsafe structure . . . is demolished or put in a safe condition within 15 days of the date of this written notice, the City shall proceed with a legal action to demolish or repair the Subject Property and any structures thereon</u>**." Dkt. # 23-1, p. 36 (emphasis in original). On the following page, entitled "VIOLATION NOTICE", after listing the various code violations, the document states:

> Given the numerous violations currently identified on site, and perhaps, even more importantly, the potential for even more and greater violations as the structure continues to deteriorate in its present condition, the City is *requiring* demolition as the most reasonable and effective solution. The property owner shall completely demolish the residential structures on site, remove all piles of rubbish and debris and remove all noxious trees, weeds and other noxious vegetation on site. The basement to the structure shall be filled and the former location of the structure evenly graded and seeded to prevent windblown dust and soil erosion.

*Id.* at p. 37 (emphasis added).

3

Upon receiving the 15-Day Notice, Trustee believed that the violations listed had already been corrected and put in a safe condition[2], although whether that was actually the case is disputed.  Dkt. # 61, ¶ 11.

At some point in 2018, Hayati Turan saw the Subject Property listed for sale and was interested in purchasing the Subject Property and remodeling/repairing it so that it could be rented out for a profit.  *Id.* ¶ 13.  Although the Subject Property was not in good condition, he believed it would be worth making the necessary repairs.  *Id.*  So, in October of 2018, Plaintiff's members began to investigate the possibility of acquiring the Subject Property.  Dkt. # 68, ¶ 4.  They made inquiries with the City to determine whether there were any zoning violations, open or active building permits, or any code violations. The City informed Gloria Turan verbally and in writing that there were no building code violations and no open code enforcement violations pending against the Subject Property.  *Id.* ¶¶ 17–18.

Based upon this information, Plaintiff decided to proceed with the purchase of the Subject Property.  *Id.* ¶ 7.  Prior to the sale, Gloria Turan and Hayati Turan visited the Subject Property.  Hayati does not recall seeing the exterior violations that were referenced in the 15-Day Notice; Gloria did not see anything that gave her concern

---

[2] In support of this fact, Trustee cites the affidavit of AJ Loll, the Vice President of Litigation for Nationstar Mortgage LLC d/b/a/ Mr. Cooper ("Nationstar"), the servicer of the loan relating to the Subject Property. Dkt. # 54-5.  Plaintiff moved to strike the Loll Affidavit, arguing Loll did not take the photographs, was never present at the Subject Property such that he would have personal knowledge as to the accuracy of the photographs, and did not state the photographs were part of Nationstar's business records.  The Court addresses the motion to strike below.

4

when she viewed the exterior of the Subject Property.  Dkt. # 61, ¶ 16.  Plaintiff was never provided with a copy of the 15-Day Notice.

On November 29, 2018, the Subject Property closed and was conveyed from Trustee to Plaintiff via a Real Estate Contract and Addendum that was executed between the parties.  *Id.* ¶ 19.  The Real Estate Contract states: "Seller represents that, with respect to the Real Estate, Seller has no knowledge of nor has Seller received any written notice from any association or governmental entity regarding: (a) Zoning, building, fire or health code violations that have not been corrected."  *Id.* ¶ 20.

The Addendum to the Real Estate Contract states as follows:

> IN THE EVENT ANY PROVISION OF THIS ADDENDUM CONFLICTS IN WHOLE OR PART WITH THE TERMS OF THE CONTRACT FOR SALE TO WHICH IT IS ATTACHED, OR ANY ADDENDA TO THE CONTRACT, THE PROVISIONS OF THIS ADDENDUM WILL CONTROL UNLESS SUCH PROVISIONS ARE CONTRARY TO ANY LAWS OR OTHER APPLICABLE LEGAL PROHIBITIONS, IN WHICH CASE THE CONTRACT SHALL GOVERN ONLY TO THE LIMITED EXTENT NECESSARY FOR COMPLIANCE WITH THE SAME.

*Id.* ¶ 21.  Paragraph Five of the Addendum further states, in part:

> BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE AND HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, OR CONCERNING . . . (iv) THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF ANY GOVERNMENT OR OTHER BODY . . . . BUYER HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT BUYER IS RELYING SOLELY UPON THE INSPECTION, EXAMINATION, AND EVALUATION OF THE PROPERTY BY BUYER AND THAT BUYER IS PURCHASING THE PROPERTY ON

5

AN "AS IS, WHERE IS" AND "WITH ALL FAULTS" BASIS AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND BUYER EXPRESSLY ACKNOWLEDGES THAT, IN CONSIDERATION OF THE AGREEMENTS OF SELLER HEREIN, SELLER MAKES NO WARRANTY OF REPRESENTATION EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE EXCEPT AS OTHERWISE SPECIFIED HEREIN. IT IS FURTHER AGREED THAT SELLER HAS NOT WARRANTED, AND DOES NOT HEREBY WARRANT THAT THE PROPERTY OR ANY IMPROVEMENTS LOCATED THEREON NOW OR IN THE FUTURE WILL MEET OR COMPLY WITH THE REQUIREMENTS OF ANY SAFETY CODE OR REGULATION OF THE STATE, CITY OR COUNTY WHERE THE PROPERTY IS LOCATED, OR OF ANY OTHER AUTHORITY OR JURISDICTION.

*Id.* ¶ 22.

On December 21, 2018, the City filed a Verified Complaint for Demolition (the "Demolition Complaint") in the Circuit Court of Lake County relating to the Subject Property.[3] Dkt. # 68, ¶ 8. In the Demolition Complaint, the City stated, "as of the filing of this Complaint, no action has been taken to bring the property in compliance with the City's Codes or to cure the dangerous and unsafe conditions on the property, and therefore, the code violations initially identified on the August 30, 2017 notice and the September 11, 15-Day Notice have continued on every succeeding day to the present date." *Id.* ¶ 10 (internal citations omitted). The Demolition Complaint further alleged that the "City has attempted to communicate with the property owner on multiple

---

[3] *City of Highwood v. U.S. Bank et. al.*, Case No. 18 CH 1424. Trustee was originally named as a defendant in the Demolition Complaint, but the City amended the complaint in April 2019 to add Plaintiff instead because Plaintiff was the new owner of the Subject Property. Dkt. # 61, ¶ 23.

occasions in order to gain voluntary compliance with the City Code, but no progress has been made to date in curing the violations and dangerous and unsafe conditions to the property." *Id.* ¶ 9. Trustee denies these allegations.

After Plaintiff purchased the Subject Property, it filed an application for a building permit along with architectural plans. *Id.* ¶ 11. On March 21, 2019, the City approved the application for a building permit to allow the remodeling of the property. *Id.* ¶ 12. On March 25, 2019, as roofing contractors were working on the property, the City issued a stop work order and revoked the building permits that had been issued. *Id.* ¶ 14. Plaintiff was not permitted to do any further work on the Subject Property and the roof was left partially exposed, leaving it vulnerable to water penetration. *Id.* Over time, this water penetration damaged the Subject Property so that it could no longer be remodeled. *Id.* ¶ 15.

In March or April of 2019, the City informed Plaintiff that the Subject Property was going to be demolished. Dkt. # 61, ¶ 24. Shortly thereafter, on or about May 16, 2019, the City informed Plaintiff for the first time that the property was structurally unsound. *Id.* ¶ 25. The City sent Plaintiff a letter stating the reasons for the City's position that the building was unsound, which did not mention any of the specific code violations listed in the 15-Day Notice. *Id.*

In addition, the City told Plaintiff around the time of closing that the current zoning for the Subject Property would allow the use of a duplex; however, the City changed the zoning at some time after the closing to only allow a single-family home.

7

*Id.* ¶ 26. The existing building could not be used for a single-family residence and thus would have to be demolished. *Id.* ¶ 27. The parties dispute whether the Subject Property faced demolition because of any specific violation listed in the 15-Day Notice to Demolish or Repair. The building on the Subject Property was demolished and removed in July 2022, at Plaintiff's expense. *Id.* ¶ 16.

Plaintiff admits that, had it known about the violations listed in the 15-Day Notice prior to closing, none of those violations would have prevented Plaintiff from going through with the purchase, because they were minor maintenance issues that could be easily remedied. *Id.* ¶¶ 29–30. Plaintiff, however, asserts it would not have purchased the Subject Property had it seen the paragraph in the 15-Day Notice stating, "given the numerous violations currently identified on site, and perhaps, even more importantly, the potential for even more and greater violations as the structure continues to deteriorate in its present condition, the City is requiring demolition as the most reasonable and effective solution." Dkt. # 23-1, p. 37.

In its First Amended Complaint, Plaintiff brought a common law fraud claim against Trustee. Trustee now moves for summary judgment on that claim.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere

8

scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

### I.    Motion to Strike

As noted above, Trustee cited the affidavit of AJ Loll, the Vice President of Litigation for Nationstar, as evidence that the necessary repairs were made to the Subject Property. Dkt. # 54-5. In his affidavit, Loll states certain repairs were made on the Subject Property in 2017, including removing the iron gate, removing dead trees and brush, and pressure-washing the exterior. *Id.* at ¶¶ 8–10. Loll further states that Nationstar and its vendors ensured that the grass and weeds at the Subject Property were cut and that there was no accumulation of trash or debris. *Id.* at ¶ 11. Loll cites to various photographs to support these statements. Loll also states that a photograph of the exterior of the Subject Property on September 18, 2018, shows that the junk and

9

debris were removed, the grass and weeds did not exceed eight inches in height, and none of the other violations listed in the 15-Day Notice are observable. *Id.* at ¶ 13.

Plaintiff moved to strike the Loll Affidavit, arguing Loll did not take the photographs, was never present at the Subject Property such that he would have personal knowledge as to the accuracy of the photographs, and did not state the photographs were part of Nationstar's business records. Trustee, in response, maintains that the Loll Affidavit is sufficient but offers the affidavit of Alan Blunt (Trustee's Rule 30(b)(6) witness) as an alternative which purports to cure the defects raised by Plaintiff with respect to the Loll Affidavit.[4] Plaintiff contends the Blunt Affidavit suffers from the same defects as the Loll Affidavit.

Any affidavit or declaration "used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Personal knowledge includes inferences and opinions, but these "must be grounded in observation or other first-hand personal experience." *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 851–52 (N.D. Ill. 2018), *aff'd,* 926 F.3d 409 (7th Cir. 2019). When it comes to testifying about business records, "the custodian need not be the individual who personally gather[ed] . . . a

---

[4] The Court, in the exercise of its discretion under Rule 56(e)(1), will grant Plaintiff's Motion to Strike the Loll Affidavit [63] but allow the belated filing of the Blunt Affidavit. The Blunt Affidavit [67-1] is deemed filed.

business record. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (internal quotation marks omitted). The affiant must provide sufficient indicia of the records' reliability by attesting to the fact that they were prepared in the regular course of business and close in time to the actions they described. *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 686 (7th Cir. 2015).

The Blunt Affidavit remedies the argued business records issue, but that's all. The Blunt Affidavit does not introduce evidence that supports a finding that Blunt has the personal knowledge necessary to be able to say the photographs contained within the business records accurately depict the condition of the Subject Property on the dates the photographs were taken. The Court therefore strikes and disregards any conclusions drawn by Blunt based on the photographs.

## II. Motion for Summary Judgment

### A. Disputed Facts

First, the disputed facts. Trustee's primary defense to Plaintiff's claims is its contention that the violations identified in the 15-Day Notice were remedied even before the notice was issued. As evidence of this purported fact, Trustee relies on the photographs contained within Trustee's business records and Plaintiff's members' admissions that they either did not observe any of the violations or did not see anything of particular concern when inspecting the exterior of the Subject Property. Plaintiff,

11

however, points to the City's verified Demolition Complaint, wherein the City alleged no progress was made in curing the violations as of the time of the filing of the complaint in December 2018. Trustee argues no reasonable jury could conclude anything other than the City's "statements in its demolition complaint are self-contradicted and demonstrably incorrect." Dkt. # 67, at 6. Thus, Trustee says, there is no genuine dispute that the violations were corrected.

However, even accepting Trustee's assertion the violations were corrected, that does not necessarily mean they were corrected to the City's satisfaction. Indeed, the fact that the City issued the 15-Day Notice identifying the same violations noted in 2017 suggests the violations may not have been adequately remedied. Additionally, the Demolition Complaint was verified by the City's Residential Zoning Officer and Code Inspector, who stated under oath that he had personal knowledge of the content of the Demolition Complaint and that the matters set forth therein were true and correct to the best of his knowledge.

Trustee also argues there is no genuine dispute that the options for the recipient of the 15-Day Notice were to *either* demolish the Subject Property *or* put it in a safe condition. Again, the Court disagrees. The 15-Day Notice contradicts itself. On page one, the owner is clearly given two options: either (1) demolish the Subject Property, or (2) put it in a safe condition. Indeed, the very document is entitled, "15-Day Notice to Demolish or Repair." Yet on the following page, it states that the City is *requiring*

12

demolition. Based on this language, a reasonable jury could conclude that the recipient of the 15-Day Notice did not have the option to repair, only to demolish.

Next, Trustee asserts there is no genuine dispute that the Subject Property was not facing demolition because of any of the specific violations listed in the 15-Day Notice. In the Court's view, this is not as clear cut as Trustee believes it is. The Demolition Complaint alleges that the structure on the Subject Property "is in a substantial state of disrepair with numerous code violations and unsafe conditions," "is dangerous and unsafe," and "incapable of reasonable repair." Dkt. # 54-2, at 43–46. The 2017 notice of code violations and the 15-Day Notice are attached as exhibits to the Demolition Complaint, which further alleges that "the substandard health and safety currently existing at or on the Property, as detailed and shown in [the exhibits] constitute an immediate and irreparable threat to the health and safety of nearby residents and property owners, and the community-at-large." *Id.* A reasonable jury might infer that the violations listed in the 15-Day Notice were at least part of the reason the Subject Property faced demolition.

### B. Fraudulent Misrepresentation

Moving on, in order to succeed on its common law fraud (also known as fraudulent misrepresentation) claim under Illinois law, Plaintiff must show that (1) Trustee made a false representation of material fact; (2) Trustee knew the representation to be false; (3) Trustee intended for the representation to induce Plaintiff to act; (4) Plaintiff relied on the truthfulness of the representation; and (5) Plaintiff was

damaged as a result of that reliance. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

Plaintiff argues that Trustee falsely represented to Plaintiff that it had no knowledge of and had not received any written notice from any association or governmental entity regarding "zoning, building, fire or health code violations that have not been corrected," Dkt. # 61, ¶ 20, disclosure of which is required under Section 35 of the Residential Real Property Disclosure Act ("Disclosure Act"), 765 ILCS 77/35. *See id.* (seller must indicate yes or no to:"I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected."). In response, Trustee argues there was no false representation of a material fact because the violations on the 15-Day Notice were cured prior to the issuance of the notice. As detailed above, however, whether the violations were remedied prior to the sale remains a disputed question of fact.

However, to succeed on its fraud claim, Plaintiff must also establish that its reliance on the misrepresentation was justified. *Vill. of Palatine v. Palatine Assocs., LLC*, 2012 IL App (1st) 102707, ¶ 80. Generally, the issue of whether a plaintiff's reliance was justified is a question of fact; however, the issue becomes a matter for the court where only one conclusion can be drawn from the undisputed facts. *Siegel Dev., LLC v. Peak Constr., LLC*, 2013 IL App (1st) 111973, ¶ 114. When assessing whether a plaintiff's reliance was justified, a court considers "all of the facts that the party knew, as well as those facts that the party could have discovered through the exercise of

14

ordinary prudence." *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125 (1995); *see also Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 456 (2004).

Trustee argues Plaintiff cannot establish that its reliance on Trustee's representations was justified because, as part of the closing, Plaintiff signed an "as is" contract with an addendum that included a non-reliance clause. Because justifiable reliance is an element of any fraud claim, parties to a contract often may "head off the possibility of a fraud suit" by incorporating—as they did here—a non-reliance clause into their written contract, "stating that neither party has relied on any representations made by the other." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002); *see also Triumph Packaging Grp. v. Ward*, 877 F. Supp. 2d 629, 647 (N.D. Ill. 2012) (non-reliance clauses in a contract can preclude fraud claims "because they inherently disprove reasonableness."). However, the Court is not convinced the non-reliance clause in this case automatically bars Plaintiff's fraud claim.

In *Bauer v. Giannis*, 359 Ill. App. 3d 897 (2d Dist. 2005), the Illinois Appellate Court addressed the effect and admissibility of a real estate contract's "as is" clause in a fraud case. The plaintiff in *Bauer* alleged that the defendants committed fraudulent misrepresentation and fraudulent concealment by concealing that the basement of the defendants' house had flooded before the sale of the house to the plaintiff. *Bauer*, 359 Ill. App. 3d at 899. The contract for the sale of the house had a rider that contained an "as is" clause, which stated that the buyer accepted the property "as is" and "without any warranty or representation on the part of the Seller." *Id.* at 901. The plaintiff moved

15

for partial summary judgment, arguing that the "as is" clause was against public policy and therefore unenforceable, and the trial court granted the motion. *Id.*

On interlocutory appeal, the appellate court held that the "as is" clause was not a defense to claims alleging fraud and that the clause was not admissible regarding the issue of reliance. *Id.* at 899. In reaching this determination, the court looked to Section 35 of the Disclosure Act, which obligates the seller of residential real property to provide a report disclosing material defects of which he or she has knowledge but does not require the seller to undertake any specific inquiry in order to complete the required report. *Id.* at 906 (citing 765 ILCS 77/20, 25). The court concluded that, although the plaintiff's claims were based on fraud and not the Disclosure Act, allowing a seller to ignore its obligation under that act and avoid reporting a material defect would "encourage the evils the legislature sought to remedy." *Id.* The court held that "[a]lthough the disclosure report is not a substitute for inspections or warranties, a purchaser is entitled to rely on the truthfulness, accuracy, and completeness of the statements contained therein." *Id.*

Trustee urges the Court to follow *Martom Partners v. U.S. Bank, N.A.*, 2015 IL App (1st) 142398-U, an unpublished, non-precedential opinion with markedly similar facts. There, the Illinois Appellate Court held that an "as is" clause and a non-reliance clause combined to defeat the buyer's claim that its reliance on the seller's representation that it did not have notice of uncorrected building code violations was reasonable. *Id.* ¶ 15. The clause at issue stated that the seller had made "no

16

representation or warranty of any kind . . . upon which Buyer has relied directly or indirectly for any purpose." *Id.* ¶ 6. *Martom Partners* found *Bauer* distinguishable because, in its view, *Bauer* involved only an "as is" clause, and not a non-reliance clause. *Id.* ¶ 15.

An "as is" clause, however, can function as a non-reliance clause. *See Walls v. Vre Chi. Eleven*, 2016 WLL 5477554, at *6 (N.D. Ill. 2016) (and discussion therein). Despite the factual similarities between this case and *Martom Partners*, the Court finds the rationale in *Bauer* more persuasive. The Disclosure Act required Trustee to state in the disclosure report whether or not it "received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected." 765 ILCS 77/35. While the non-reliance clause may bar fraud claims based on misrepresentations about the general condition of the property, it does not bar Plaintiff's fraud claim arising out of an alleged misrepresentation on the disclosure report that Trustee had no notice of any open code violations. The Court makes no finding as to the admissibility of the "as is" and non-reliance clauses at trial.

### C. Fraudulent Concealment

In any event, while a non-reliance clause may effectively ward off a fraudulent misrepresentation claim, Illinois courts have suggested that a non-reliance clause will not bar a fraudulent concealment claim unless the clause specifically references omissions. *See Walls*, 2016 WL 5477554, at *3 (and cases cited therein). This is because "the reliance element for a claim of fraudulent concealment means reliance on

the defendant's silence." *Id.* Because the portion of the Addendum Trustee relies on refers only to "oral or written" warranties, guaranties, and representations, and not omissions, the non-reliance clause does not preclude Plaintiff's fraud claim to the extent it is based on fraudulent concealment. *See Sears Home Appliance Showrooms, LLC v. Charlotte Outlet Store, LLC*, 2018 WL 3068459, at *7 (N.D. Ill. 2018); *Benson v. Stafford*, 407 Ill. App. 3d 902, 927–28 (1st Dist. 2010).

To prove fraudulent concealment, Plaintiff must establish that: (1) Trustee concealed a material fact under circumstances that created a duty to speak; (2) Trustee intended to induce a false belief; (3) Plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon Trustee's silence as a representation that the fact did not exist; (4) the concealed information was such that Plaintiff would have acted differently had it been aware of it; and (5) Plaintiff's reliance resulted in damages. *Schrager v. N. Cmty. Bank,* 328 Ill. App. 3d 696, 706–07 (1st Dist. 2002).

At the outset, Plaintiff must establish that the existence of the 15-Day Notice is a material fact—or at least demonstrate it is a question for the trier of fact. Trustee contends it is not material because it is undisputed that Plaintiff still would have gone through with the sale had it known about the code violations. What arguably *is* material, however, is the language in the notice which states the City was *requiring* demolition of the Subject Property. Considering the confusing and contradictory language of the 15-Day Notice, a reasonable trier of fact could conclude Plaintiff would have acted

differently had it been presented with the notice. *See Wernikoff v. Health Care Service Corp.*, 376 Ill. App. 3d 228, 234 (1st Dist. 2007) ("A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision regarding the purchase of the product."); *see also Napcor Corp. v. JP Morgan Chase Bank, NA*, 406 Ill. App. 3d 146, 154 (2d Dist. 2010) ("Here, although Jahnke testified he would have gone forward with the deal even if he had known about the true condition of the roof, he also testified that it likely would have had a financial impact on the offer. Based on this testimony, the trier of fact could have concluded that plaintiff would have acted differently had it known the roof was not a tear-off.").

Plaintiff must also show that Trustee was under a duty to disclose the material fact. *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1087 (3d Dist. 2010). A duty to speak arises where the parties are in a fiduciary relationship, or where one party occupies a position of superiority or influence with respect to the other party. *Schrager*, 328 Ill. App. 3d at 707; *see also Benson*, 407 Ill. App. 3d at 918–19. A party may also be subject to a statutory duty to disclose certain facts. *See*, *e.g., Bauer*, 359 Ill. App. 3d at 906 (seller's duty under Disclosure Act supported fraudulent concealment claim).

Here, Plaintiff argues Trustee's duty to disclose is found in the Disclosure Act. Trustee responds that the Disclosure Act cannot be used to create liability that would not otherwise exist under common law. Section 45 of the Disclosure Act "provides, without exception, that it does not limit or modify any duty to disclose information in

order to avoid liability for fraud." *Rolando v. Pence*, 331 Ill. App. 3d 40, 45 (2d Dist. 2002); 765 ILCS 77/45. Thus, Section 45 "allows plaintiffs to seek recovery for fraudulent misrepresentation based solely on a disclosure made pursuant to the [Disclosure] Act." *Id.* at 46. Whether Trustee had a duty to disclose the 15-Day Notice under the Disclosure Act depends, at least in part, on a disputed question of fact: whether the violations identified in the 15-Day Notice were corrected prior to the sale of the Subject Property.

### D. Proximate Causation

Finally, Trustee argues that Plaintiff cannot establish loss causation. Trustee contends the proximate cause of Plaintiff's injuries was the City's pre-closing assurances that there were no open violations with respect to the Subject Property, and the City's post-closing decision to pursue demolition of the Subject Property as a result of its structural unsoundness and zoning changes, of which Trustee had no knowledge.

The term "proximate cause" embodies two distinct requirements: cause in fact and legal cause. *Lee v. Chi. Transit Auth.*, 152 Ill. 2d 432, 455 (1992). "Cause in fact" is established where there is reasonable certainty that the injury would not have occurred "but for" the defendant's conduct or where a defendant's conduct was a "substantial factor" in bringing about the harm. *Turcios v. The DeBruler Co.*, 2015 IL 117962, ¶ 23. "In contrast, legal cause involves an assessment of foreseeability." *Id.* ¶ 24. Legal cause is established "only when the injury is reasonably foreseeable, *i.e.*, when the defendant's conduct is so closely tied to the plaintiff's injury that he should

20

be held legally responsible for it." *Steed v. Rezin Orthopedics & Sports Med.*, 2021 IL 125150, ¶ 37 (cleaned up). Legal cause is established where the injury is the type of injury that a reasonable person would see as a "likely result" of his conduct and is not established where the injury is so "highly extraordinary" that imposing liability is not justified. *Turcios*, 2015 IL 117962, ¶ 24. "Importantly, 'the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act.'" *Id.* ¶ 27 (quoting *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 58 (1994)).

Trustee contends purported structural issues and zoning violations of which it had knowledge were the natural and direct cause of Plaintiff's alleged loss. As such, Trustee says, Trustee "could not have proximately caused Plaintiff's injury as a matter of law even if one assumes that Plaintiff was kept ignorant of the minor exterior violations listed in the 15-Day Notice." Dkt. # 53, at 9. Certainly, post-sale developments of which Trustee had no knowledge would seem to break the chain of causation as an intervening force. *See Maxwell v. KPMG, LLP*, 2007 WL 2091184, at *4 (N.D. Ill. 2007). Trustee also argues it could not have foreseen that the City would insist on demolition shortly after it previously assured Plaintiff that there were no open or active violations at the Subject Property. Yet Trustee was in possession of the 15-Day Notice that stated the City was *requiring* demolition and, again, whether the violations were cured is a disputed question of fact.

Drawing all inferences in the light most favorable to Plaintiff, the Court concludes that the determination as to whether any damages were proximately caused

by Trustee's alleged fraudulent conduct is a question of fact unsuited for summary judgment.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Strike [63] is granted and Trustee's Motion for Summary Judgment [52] is denied. US Bank in its individual capacity is dismissed as a party defendant.

It is so ordered.

Dated: January 3, 2023

_____
Charles P. Kocoras
United States District Judge